**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION**

| | |
|---|---|
| Damian Scott Olvera, )<br>)<br>　　　　　Petitioner, )<br>)<br>vs. )<br>)<br>United States of America, )<br>)<br>　　　　　Respondent. ) | **ORDER ON MOTION TO VACATE,<br>SET ASIDE, OR CORRECT SENTENCE**<br><br>Case No. 3:19-cv-00209 |
| United States of America, )<br>)<br>　　　　　Plaintiff, )<br>)<br>vs. )<br>)<br>Damian Scott Olvera, )<br>)<br>　　　　　Defendant. ) | Case No. 3:16-cr-00198 |

Before the Court is Petitioner Damian Scott Olvera's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 filed on September 23, 2019. Doc. No. 123. The Government responded in opposition to the motion on February 21, 2020. Doc. No. 128. Olvera filed a reply on June 8, 2020. Doc. No. 138. With the exception of two claims that require an evidentiary hearing, the motion is denied.

**I.   BACKGROUND**

The conduct leading to Olvera's convictions and sentence occurred between late 2015 and early 2016 when he was 22 years old. At that time, Olvera was in a romantic relationship with Amanda Alfaro. Doc. No. 107, ¶ 4. They lived together in an apartment in Fargo, North Dakota, along with Alfaro's mother and two sisters. Id. On January 5, 2016, Alfaro's then 11-year-old sister, O.A., warned Alfaro and their mother to keep Olvera away from R.A., Alfaro's then 12-

year-old sister. Id. ¶ 5. After receiving the warning, Alfaro's mother examined R.A.'s cell phone. Id. She discovered text messages between R.A. and Olvera that detailed a sexual relationship. Id. The text messages also referenced sexually explicit images and videos exchanged between R.A. and Olvera. Id. In reaction, Alfaro and her mother contacted the Fargo Police Department. Id. ¶ 6. An officer responded, took statements from the Alfaro family, and seized R.A.'s cell phone. Id. A detective later interviewed Olvera at his workplace. Id. During the interview, Olvera admitted to engaging in a sexual relationship with R.A. and to receiving sexually explicit images and videos from her over an approximately two-week period. Id. Law enforcement then arrested Olvera on a state gross sexual imposition charge. Id. ¶ 27.

Following Olvera's arrest, Alfaro discovered more child pornography on her tablet, which she sent to the Fargo Police Department. Id. ¶ 7. The images on the tablet derived from an email account: inkheart.archnaidguy@yahoo.com. Id. An ensuing forensic evaluation of R.A.'s cell phone uncovered communications between R.A.'s email account and an email account belonging to Olvera: arevlo.naimaD@gmail.com. Id. ¶ 8. Homeland Security Investigations subsequently obtained search warrants for both email accounts. Id. The warrants yielded evidence that Olvera used the Gmail account to communicate with R.A. and to receive sexually explicit images and videos from her. Id. Olvera then forwarded the content to the Yahoo account. Id. Inspection of the Yahoo account also revealed unrelated child pornography dating back to May 2013, including videos of adult males vaginally penetrating minor females. Id. ¶ 9. In total, law enforcement recovered more than 600 verified images of child pornography from Olvera's email accounts. Id.

On August 17, 2016, a grand jury returned a four-count Indictment against Olvera. Doc. No. 1. The first three counts charged Receipt of Materials Containing Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(b)(1), and a fourth count charged Possession

of Materials Containing Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2).[1]  Id.  Upon arraignment on August 19, 2016, the Court appointed Assistant Federal Public Defender Christopher Lancaster to represent Olvera, as well as Nicole Bredahl as limited CJA counsel.  Doc. No. 6.  On August 24, 2016, Olvera informed the Court that he intended to retain private counsel.  Doc. No. 13.  Olvera retained Noe Robles, and the Court granted a corresponding motion to substitute attorney on October 4, 2016.  Doc. No. 25.

The Government sent a proposed plea agreement to Robles on January 5, 2017.  Doc. No. 128-1.  The proposed plea agreement contemplated Olvera pleading guilty to Counts One and Four of the Indictment.  Doc. No. 128-2, ¶ 4.  In addition, the proposed plea agreement set out a preliminary sentencing guidelines calculation.  Id. ¶¶ 13-16.  The calculation suggested that the parties would agree to a base offense level of 22 under USSG § 2G2.2(a)(2) with the following upward adjustments:

- +5 levels because defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor.  (USSG § 2G2.2(b)(5))

- +2 levels because the offense involved use of a computer.  (USSG § 2G2.2(b)(6))

- +4 levels due to the amount of images (at least 300, but fewer than 600). (USSG § 2G2.2(b)(7)(C))

Id. ¶¶ 13-14.  The proposed plea agreement also included a tentative commitment from the Government to recommend a three-level downward adjustment for acceptance of responsibility under USSG § 3E1.1.  Id. ¶ 16.  The total offense level in the proposed plea agreement therefore rested at 30.

---

[1] State authorities dismissed the gross sexual imposition charge in favor of federal prosecution.  Doc. No. 107, ¶ 45.  Olvera received credit for the time in state custody toward his eventual federal sentence.  Doc. No. 128-5, p. 3.

The Government set January 17, 2017 as the acceptance deadline for the proposed plea agreement. Doc. No. 128-1. Robles apparently did not respond to the offer. On January 19, 2017, Robles moved to continue the then prevailing February 7, 2017 trial date. Doc. No. 35. As grounds for the motion, Robles disclosed that doctors had diagnosed him with a heart condition that would require emergency surgery. Id. The Court promptly reset the trial for April 11, 2017. Doc. No. 37. With the new trial date in place, the Government sent Robles the same proposed plea agreement a second time on March 1, 2017. Doc. No. 128-3. The acceptance deadline extended to March 13, 2017. Id.

On March 8, 2017, Robles informed the Government that he was recovering from surgery and intended to withdraw as Olvera's counsel. Doc. No. 128-4. The Court granted the motion to withdraw on March 14, 2017 and reappointed Lancaster. Doc. Nos. 39, 40. The Government then offered a second plea agreement to Lancaster. The second plea agreement still contemplated Olvera pleading guilty to Counts One and Four of the Indictment with a preliminary base offense level of 22. Doc. No. 53, ¶¶ 4, 13. But the proposed upward adjustments increased by five levels:

- +5 levels because defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor. (USSG § 2G2.2(b)(5))

- +2 levels because the offense involved a computer. (USSG § 2G2.2(b)(6))

- +5 levels due to the amount of images (600 or more images). (USSG § 2G2.2(b)(7)(D))

- +4 levels due to sadistic or masochistic conduct or other depictions of violence. (USSG § 2G2.2(b)(4)(A))

Id. ¶ 14. With the potential three-level downward adjustment for acceptance of responsibility included, the second plea agreement called for a total offense level of 35. Id. ¶ 16. The parties also handwrote in additional terms to the second plea agreement. See id. ¶¶ 14, 18. Namely, the Government consented to recommend a sentence in the middle of the applicable guideline range,

4

and Olvera reserved argument on the enhancements for 600 or more images and depictions of sadomasochistic conduct.  See id.

Olvera signed the second plea agreement as modified on July 11, 2017.  Doc. No. 53, p. 11.  He appeared before then District Judge Ralph R. Erickson for an August 10, 2017 change of plea hearing.  Doc. No. 57.  Following an extended colloquy, Judge Erickson continued the change of plea hearing so Olvera could resume taking prescribed depression medication and fully recover from a mild respiratory illness.  Doc. No. 98, pp. 19-20.

The continued change of plea hearing occurred on November 1, 2017.  Doc. No. 61.  Judge Erickson, by then elevated to the Eighth Circuit Court of Appeals but sitting by designation, deemed Olvera competent to proceed.  Doc. No. 99, p. 5.  At the outset of the hearing, Olvera voiced an intent to forgo the plea agreement and enter an open plea to all four charges in the Indictment.  Id. at 6.  Olvera changed his mind after speaking with Lancaster during the hearing, however, and proceeded to plead guilty to Counts One and Four of the Indictment pursuant to the plea agreement.  Id. at 29-30.

Then in early March 2018, Olvera filed near-simultaneous pro se motions for new counsel and to withdraw his guilty plea.  Doc. Nos. 71, 75.  The Court granted the motion for new counsel on March 16, 2018 and appointed Alexander Reichert to represent Olvera.  Doc. Nos. 78, 79.  On June 21, 2018, Olvera renewed the motion to withdraw his guilty plea through counsel.  Doc. No. 83.  But after further discussion with Reichert, Olvera withdrew the motion on July 3, 2018 and elected to proceed with sentencing.  Doc. No. 90.

Sitting by designation, now Chief Judge Roberto A. Lange of the District of South Dakota took up Olvera's case for sentencing.  Doc. No. 93.  The Court scheduled a sentencing hearing for September 10, 2018.  Doc. No. 94.  On September 5, 2018, Reichert filed a motion to continue the

hearing. Doc. No. 95. He explained that Olvera had asked him to look into certain items before sentencing and that he had yet to review the transcripts from the change of plea hearings with Olvera. Id. The same day, the Court docketed a letter from Olvera stating he had not spoken with Reichert in nearly two months and requesting information as to whether he had an upcoming hearing. Doc. No. 96. The Clerk of Court sent a response letter informing Olvera of the impending sentencing hearing, and Judge Lange denied the motion to continue on September 7, 2018. Doc. Nos. 96-2, 100.

Reichert renewed the motion to continue when the sentencing hearing commenced, affirming that the substance of Olvera's letter was true and that they had not communicated since making the decision to move forward with sentencing. Doc. No. 120, pp. 4-5. He also explained that Olvera had asked him to confer about the presentence investigation report ("PSR"), the sentencing memoranda, the recently prepared transcripts from the change of plea hearings, and an expert analysis of the digital evidence. Id. at 6-7.

Judge Lange acknowledged the concern regarding Reichert's limited communication with Olvera. Id. at 9. Even so, he noted reviewing the sentencing memoranda and objections to the PSR, describing them as "thoughtful" and "well done." Id. at 7-8. He also pointed out that proceeding with the hearing that day would result in Olvera receiving a two-level downward adjustment for the final sentencing guidelines tally. Id. at 9. Specifically, the initial calculation in the PSR included all the enhancements in the second plea agreement plus another two-level enhancement under USSG § 2G2.2(b)(2) for material involving a prepubescent minor or a minor who had not attained the age of 12 years. Doc. No. 101, ¶¶ 15-19. That meant the total offense level in the PSR came out to 37, with an attendant guideline range of 210-262 months' imprisonment. Id. ¶¶ 27, 74. Defense counsel objected to the additional enhancement's inclusion

in the PSR prior to sentencing.  Doc. No. 101, p. 21.  In response, the Government conceded to inadvertently leaving the prepubescent-minor enhancement out of the plea agreement.  Doc. No. 120, p. 10.  As a result, the Government confirmed it would adhere to the terms of the plea agreement and abstain from presenting evidence to support the enhancement.  Id.  Judge Lange informed the parties that he intended to sustain the defense objection and afford Olvera the two-level benefit of the Government's omission, explaining that a continuance could foreclose that opportunity.  Id. at 9.  Judge Lange consequently denied the renewed continuance motion.  Id.

After Judge Lange sustained the objection to the prepubescent-minor enhancement and recalibrated the total offense level at 35, the parties presented argument on the appropriate sentence.  Id. at 11-13.  The Government, per the plea agreement, recommended a 189-month sentence in the middle of the guideline range.  Id. at 14.  For his part, Reichert did not contest the enhancements for 600 or more images or depictions of sadomasochistic conduct.  But he did advance a variance request for a sentence at the 60-month mandatory minimum in line with the sentencing memorandum he submitted.  See Doc. No. 102.  His argument focused on the relatively modest number of images Olvera possessed compared to many child pornography defendants, the need for rehabilitation through treatment rather than a lengthy prison sentence, and Olvera's disadvantaged upbringing.  Doc. No. 120, pp. 21-24.

Judge Lange weighed the 18 U.S.C. § 3553(a) factors and rejected the variance request.  In doing so, he determined that the nature and circumstances of the offense favored a within-guidelines sentence based on Olvera sexually abusing R.A. and possessing child pornography for more than two years before arrest.  Id. at 30-31.  Judge Lange accounted for the personal history and characteristics factor by commenting on Olvera's difficult upbringing, positive work history, and lack of criminal record.  Id. at 31-32.  Considering all the sentencing factors, he concluded

that Olvera's case "seems like the heartland-type case where the guideline range ought to be followed." Id. at 34.  Accordingly, Judge Lange imposed a 180-month sentence with 15 years of supervised release to follow.  Doc. No. 105.  Olvera did not pursue a direct appeal.

## II.    LEGAL STANDARD

A motion under 28 U.S.C. § 2255 provides avenues for relief "in several circumstances, including cases shown to contain jurisdictional errors, constitutional errors, and errors of law." Raymond v. United States, 933 F.3d 988, 991 (8th Cir. 2019) (citing 28 U.S.C. § 2255(b)). "Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Fletcher v. United States, 858 F.3d 501, 505 (8th Cir. 2017) (quoting Jennings v. United States, 696 F.3d 759, 762 (8th Cir. 2012)).  An evidentiary hearing is required unless the allegations in the motion are inherently incredible, contradicted by the record, merely conclusory, or would not entitle the petitioner to relief even if true.  Roundtree v. United States, 751 F.3d 923, 926-27 (8th Cir. 2014).  "The movant bears the burden to prove each ground entitling relief."  Golinveaux v. United States, 915 F.3d 564, 567 (8th Cir. 2019) (citation omitted).

Olvera bases his § 2255 motion on several claimed violations of his Sixth Amendment right to effective assistance of counsel.  To obtain relief on an ineffective assistance of counsel claim, a petitioner must satisfy the two-prong test announced in Strickland v. Washington, 466 U.S. 668, 687 (1984).  For the first prong, a petitioner must establish constitutionally deficient representation, meaning counsel's performance fell below an objective standard of reasonableness. Meza-Lopez v. United States, 929 F.3d 1041, 1044 (8th Cir. 2019) (citing Strickland, 466 U.S. at 687-88).  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Strickland, 466 U.S. at 687.  "Judicial scrutiny of counsel's performance must be highly deferential."  Id. at 689.

Courts view the representation from counsel's perspective at the time of the alleged error to avoid the effects of hindsight and second-guessing. Kemp v. Kelley, 924 F.3d 489, 500 (8th Cir. 2019) (citing Strickland, 466 U.S. at 489). A petitioner must overcome a strong presumption that defense counsel provided "adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690; see also Camacho v. Kelley, 888 F.3d 389, 394 (8th Cir. 2018). Strategic decisions made after a thorough investigation of the law and facts are virtually unchallengeable. United States v. Orr, 636 F.3d 944, 950 (8th Cir. 2011).

To satisfy the second prong, a petitioner must demonstrate that prejudice resulted from the deficient representation. Strickland, 466 U.S. at 687. To do so, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Adejumo v. United States, 908 F.3d 357, 361 (8th Cir. 2018) (quoting Strickland, 466 U.S. at 694). A reasonable probability is one "sufficient to undermine confidence in the outcome." Wiggins v. Smith, 539 U.S. 510, 534 (2003) (quoting Strickland, 466 U.S. at 694). When evaluating the probability of a different result, courts view the totality of the evidence to gauge the effect of the error. Williams v. United States, 452 F.3d 1009, 1013 (8th Cir. 2006) (citing Strickland, 466 U.S. at 495).

Where a petitioner raises multiple ineffective assistance of counsel claims, each claim must be examined independently rather than collectively. Hall v. Luebbers, 296 F.3d 685, 692-93 (8th Cir. 2002) (citing Wainwright v. Lockhart, 80 F.3d 1226, 1233 (8th Cir. 1996)). Cumulative error will not justify habeas relief. Middleton v. Roper, 455 F.3d 838, 851 (8th Cir. 2006).

### III. DISCUSSION

Olvera contends that both Reichert and Robles provided ineffective assistance of counsel at various stages. First, he asserts Reichert committed a host of errors leading up to and during the

sentencing hearing. Second, he claims Reichert failed to file a requested notice of appeal. And third, he avers Robles failed to adequately convey the first plea agreement before the deadline to accept expired. The Court addresses each in turn.

### A. Sentencing Performance

Olvera's motion and supplemental filings raise six distinct errors Reichert purportedly committed relevant to sentencing: (1) failure to communicate with Olvera in the two months prior to the hearing; (2) failure to properly investigate and present mitigating evidence, such as a previously prepared psychosexual evaluation report, expert testimony on the digital evidence, the percentage of child pornography recovered relative to all pornography Olvera possessed, an apology letter addressed to R.A., and character letters from family members and a religious counselor; (3) failure to argue for a "reasonable" downward variance; (4) failure to object to statements the Government made at the hearing regarding images and videos depicting prepubescent minors; (5) failure to contest the enhancement for possession of 600 or more images; and (6) failure to contest the enhancement for depictions of sadomasochistic conduct. Each asserted error falters for lack of prejudice, obviating the need to consider the possibility of deficient performance. See DeRoo v. United States, 223 F.3d 919, 925 (8th Cir. 2000) (citing United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996)) ("If the defendant cannot prove prejudice, [a court] need not address whether counsel's performance was deficient.").

Prejudice in the sentencing context requires a petitioner to demonstrate a reasonable probability that he "would have received a shorter sentence if counsel had not been ineffective." United States v. Parrott, 906 F.3d 717, 720 (8th Cir. 2018) (per curiam) (citing Winfield v. Roper, 460 F.3d 1026, 1033 (8th Cir. 2006)). The first and second errors Olvera advances are related, with both charging that Reichert failed to adequately investigate and present mitigating evidence

at sentencing. But even if Reichert had prepared and presented all the evidence Olvera suggests, the probability of a lower sentence is nonexistent.

To start, Olvera never identifies what the psychosexual report, the expert analysis of the digital evidence, or the child pornography percentage statistics would have shown—much less the probability of a favorable resulting impact on his sentence. Indeed, Olvera entirely ignores the possibility that this evidence could have just as easily revealed damaging information cutting toward a harsher sentence. And even assuming the evidence had been helpful, none of it would have altered the applicable guideline range. Nor would the evidence have detracted from the focal point for the sentence imposed—Olvera's conduct in sexually abusing a 12-year-old and possessing child pornography for more than two years before arrest.

The apology letter and proposed character letters would not have moved the needle, either.[2] Although certainly meriting consideration, the letters would have been cumulative of Olvera's allocution and the sentencing memoranda. For example, Olvera articulated a desire to make amends with and seek forgiveness from the victims of his crimes. Doc. No. 120, p. 27. He also mentioned his mother's health problems, his religious activities while in custody, and the need for rehabilitation for his family's sake. Id. at 25-27. Moreover, based on background information Reichert provided in his sentencing memorandum, Judge Lange referenced Olvera's difficult upbringing and family experience with sexual assault. Id. at 31, 42. Taking all that into account, Judge Lange nevertheless determined, "It's hard just on the personal history and characteristics to

---

[2] With his reply, Olvera submitted several letters from family members and a religious counselor whom he met while in custody. Doc. No. 138-2. Although many of the letters appeal for leniency in the context of the present § 2255 motion, the Court will consider the sentiments expressed within them as if they were intended for presentation at Olvera's sentencing hearing.

justify a downward variance." Id. at 32. The failure to present Olvera's proffered evidence and letters is insufficient to undermine confidence in the sentence imposed.

The next allegation of error—that Reichert failed to request a "reasonable" downward variance—lacks merit. In essence, Olvera contends that Reichert should have argued for a higher sentence than the 60-month mandatory minimum, which would have resulted in a lower sentence. Review of the transcript, however, evinces that Judge Lange carefully considered not only whether to vary downward to 60 months, but whether to vary downward at all. He squarely rejected that option by deciding Olvera's case "seems like the heartland-type case where the guideline range ought to be followed." Id. at 34. Olvera's conclusory assertion that an argument for a stiffer sentence would have somehow changed the end result is not enough to establish prejudice.

Failure to object to the Government's statements regarding materials depicting prepubescent minors likewise lacked prejudicial effect. Judge Lange sustained Reichert's objection to the two-level enhancement for depictions of prepubescent minors. Beyond that, he ordered the PSR edited to replace a statement that one of the videos showed a prepubescent female who was "approximately nine years old" with a less definitive remark that the minor female "may have been nine years old." Id. at 12. True enough, Judge Lange referenced the Government's comments insinuating that Olvera had viewed prepubescent child pornography when explaining his rationale for a 180-month sentence. But he then clarified that "the focus of Mr. Olvera's sexual interest appears to be pubescent and maybe into adult." Id. at 30-31. In light of that awareness, an objection to parse differences among the child victims' ages in some images and videos would not have diminished the sentence.

Further, an objection lodged against the USSG § 2G2.2(b)(7) enhancement for possession of 600 or more images would have been appropriately overruled. Olvera first contends that the

enhancement was inapposite because not all the counted images depicted children. But the PSR confirms otherwise: "In total, there were more than 600 images of child pornography recovered from the defendant's email accounts. All of the images and videos were sent to the National Center for Missing and Exploited Children (NCMEC), which reported that the images and videos depict known or identified children." Doc. No. 107, ¶ 9. The record therefore plainly contradicts Olvera's unsupported theory. Alternatively, he argues that because he only possessed, rather than distributed, child pornography, the Government improperly counted duplicate images to clear the 600-image threshold. Not so. Duplicates count as separate images under USSG § 2G2.2(b)(7) for possession and distribution offenses alike. United States v. Ardolf, 683 F.3d 894, 901-02 (8th Cir. 2012).

Similarly, the sadomasochistic conduct enhancement properly applied. Olvera possessed videos of adult males vaginally penetrating minor females. Such depictions are per se sadistic. United States v. Johnson, 450 F.3d 831, 834 (8th Cir. 2006) (citing United States v. Belflower, 390 F.3d 560, 561 (8th Cir. 2004)). And contrary to Olvera's position, the reach of that precedent is not limited to acts committed upon prepubescent minors. See United States v. Schnekenburger, 788 F. App'x 1044, 1044 (8th Cir. 2020) (per curiam) (unpublished mem.) (finding enhancement applicable where video showed 15-year-old inserting foreign object into vagina and anus); United States v. Malsch, 217 F. App'x 575, 576 (8th Cir. 2007) (per curiam) (unpublished) (finding enhancement applicable where picture showed adult male sexually penetrating approximately 12-year-old female). Because objections to the enhancements for depictions of sadomasochistic conduct and possession of 600 or more images would have been unsuccessful if made, Olvera once again falls short in showing a reasonable probability of receiving a lesser sentence.

All told, lack of prejudice defeats the ineffective assistance of counsel claims pertaining to Reichert's performance before and at sentencing. Olvera's motion is accordingly denied without an evidentiary hearing as to those claims.

### B. Notice of Appeal

Turning to the penultimate claim, Olvera asserts that Reichert failed to file a requested notice of appeal. If so, that would constitute deficient performance because "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). When counsel fails to file a notice of appeal as directed, "prejudice is presumed because the defendant has forfeited his right to an appellate proceeding as a result of his counsel's error." Watson v. United States, 493 F.3d 960, 963-64 (8th Cir. 2007) (citing Flores-Ortega, 528 U.S. at 483-84). Likelihood of success on appeal is irrelevant to the prejudice inquiry. Barger v. United States, 204 F.3d 1180, 1182 (8th Cir. 2000).

Beyond the allegations in the motion, Olvera filed a sworn declaration with his reply recounting a purported conversation with Reichert immediately following the sentencing hearing. Doc. No. 138-3. The declaration avers that Olvera directly instructed Reichert to file a notice of appeal. Id. at 3. The declaration further states that Olvera later called Reichert's office and sent a handwritten letter regarding the appeal to no avail. Id. In opposition, the Government proposes submitting an affidavit from Reichert in lieu of a full evidentiary hearing. But Olvera offers specific factual allegations, which the Court must accept as true at this juncture. A potentially competing affidavit would therefore be insufficient to stave off a factual dispute. See Witthar v. United States, 793 F.3d 920, 923 (8th Cir. 2015). Because the record does not conclusively refute Olvera's claim, an evidentiary hearing is necessary.

### C. Communication of First Plea Agreement

Olvera's final claim contends that Robles failed to adequately communicate the first plea agreement before it lapsed. Defendants are entitled to effective assistance of counsel during plea negotiations. Lafler v. Cooper, 566 U.S. 156, 162 (2012). In the plea-bargain context, the performance prong mandates defense counsel "to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Missouri v. Frye, 566 U.S. 134, 145 (2012). That duty includes the responsibility "to inform a defendant of the advantages and disadvantages of a plea agreement and the attendant statutory and constitutional rights that a guilty plea would forgo." Libretti v. United States, 516 U.S. 29, 50-51 (1995); see also Padilla v. Kentucky, 559 U.S. 356, 370 (2010). Meanwhile, a claim such as Olvera's triggers a unique prejudice probe:

> To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion . . . . To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.

Frye, 566 U.S. at 147.

Here, Olvera asserts that Robles sent him the first plea agreement just a few days before withdrawing from the representation for health reasons. See Doc. No. 138-4, p. 2. Robles allegedly advised Olvera only that he should take the deal without explaining the agreement's terms or the consequences of entering a guilty plea. Id. By the time the Court appointed Lancaster to the representation on March 14, 2017, the offer had lapsed. Assuming they prove true, Olvera's allegations could support a finding of deficient performance. Prejudice may be present, too. The

15

record does not foreclose the possibility that Olvera would have accepted the first plea agreement if competently advised. And nothing definitively indicates that either the Government or the Court would have later refused to accept the first plea agreement. Finally, the first plea agreement contemplated five fewer levels of upward adjustments than the second plea agreement Olvera ultimately accepted. Compare Doc. No. 128-2, ¶ 14, with Doc. No. 53, ¶ 14. That is sufficient to demonstrate the potential for a reasonable probability of a lower sentence. As a consequence, an evidentiary hearing is warranted on this claim as well.

## IV.  CONCLUSION

The Court has reviewed the record, the parties' filings, and the relevant legal authority. Except as otherwise identified above, Olvera's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (Doc. No. 123) is **DENIED**. The two remaining claims necessitate an evidentiary hearing. Pursuant to 18 U.S.C. § 3006A(a)(2)(B), the Clerk of Court is directed to secure counsel for Olvera to represent him for the duration of these proceedings. The United States Marshals Service is directed to transport Olvera to Fargo, North Dakota, to consult with his attorney and prepare for the evidentiary hearing. The Court will communicate with the parties to schedule the evidentiary hearing in the coming days.

**IT IS SO ORDERED**.

Dated this 17th day of September, 2020.

*/s/ Peter D. Welte*
Peter D. Welte, Chief Judge
United States District Court